UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIO A. AGOSTINI, | : | CIVIL NO: 1:14-CV-02234 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Caldwell) |
| v. | : | |
| | : | |
| CRAIG LOWE, *et al*., | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

In this civil action, proceeding *via* an amended complaint, the *pro se* plaintiff, Mario A. Agostini ("Agostini"), currently a pre-trial detainee at Pike County Correctional Facility ("PCCF"), raises 42 U.S.C. § 1983 federal constitutional claims against PCCF; PCCF employees and medical staff; Pike County; and Prime Care Medical, which is PCCF's medical provider. Agostini's claims primarily stem from incidents that occurred at PCCF. Pending are two motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As set forth below, we recommend that the motions to dismiss be granted. We also, however, recommend that Agostini be granted leave to file a second amended complaint.

## I.   Relevant Procedural History.

On November 24, 2014, Agostini initiated this lawsuit by filing a complaint. *Doc. 1*. Along with the complaint, Agostini filed a motion to proceed *in forma pauperis*, which the Court granted. *Docs. 2 & 12*. On January 29, 2015, Agostini filed an amended complaint and named the following defendants: (1) Pike County; (2) Pike County Correctional Facility ("PCCF"); (3) Prime Care Medical, Inc. ("Prime Care"), an entity responsible for providing medical services to the inmates at PCCF; (4) Craig Lowe ("Lowe"), Warden of PCCF; (5) Lieutenant Todd Schweyer ("Schweyer"), Second Shift Lieutenant at PCCF; (6) Mary Keller ("Keller"), Classifications Counselor at PCCF; (7) Terry Mooney ("Mooney"), Programs Counselor at PCCF; (8) Officer Tarkett ("Tarkett"), Correctional Officer at PCCF; (9) Linda Monaghan ("Monaghan"), Nurse for Prime Care; (10) Patty Bunting ("Bunting"), Nurse Practitioner for Prime Care; and (11) Tina Goodwin ("Goodwin"), Nurse Administrator for Prime Care.   *Doc. 23*.   According to Agostini, he sues Pike County, PCCF, and Prime Care in their official capacities, while he sues the other defendants solely in their individual capacities.   In his amended complaint, Agostini asserts Eighth and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983.   Agostini also generally alleges negligence and malpractice against Prime Care Medical employees, but he does not appear to list

these as separate causes of action.   In this matter, two motions to dismiss Agostini's amended complaint have been filed.  The first motion to dismiss (*Doc. 26*) was filed by defendants Keller, Lowe, Mooney, Pike County, PCCF, Schweyer, and Tarkett on January 30, 2015.  A separate motion to dismiss (*Doc. 45*) was filed by defendants Bunting, Goodwin, Monaghan, and Prime Care on March 30, 2015.   These motions to dismiss are both ripe for this Court's disposition.

## II.   <u>Legal Standard.</u>

Defendants' motions to dismiss are brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, and a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis." *Fowler,* 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. *Id.* at 210–11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoted case omitted). While traditionally focused upon the allegations contained in a complaint, a court may also consider exhibits attached to a complaint, matters of public record, and "an undisputedly authentic document" relied upon by the plaintiff and attached as an exhibit to a defendant's motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, in a case such as this, a complaint filed by a *pro se* litigant is to be liberally construed and held to a less stringent standard than formal complaints drafted by a lawyer.

4

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III.   <u>Agostini's Amended Complaint</u>.[1]

Agostini's claims stem from a fall he sustained while attempting to climb onto the upper tier bunk bed assigned to him at PCCF and the medical treatment he received after that fall.   The material facts alleged in Agostini's amended complaint are as follows.

### A. Agostini's Fall and Subsequent Medical Treatment.

According to Agostini, because no ladders were provided by the prison, he had devised a technique to access his top tier bunk bed, in which he stepped upon a stool that was attached to a desk in his cell.  *See Doc*. *23* at ¶¶ 21, 27.  Allegedly, on September 13, 2014 at 10:50 a.m., when Agostini was attempting to access his top bunk via this technique, the desk stool slipped out from underneath his feet and caused him to fall onto the cell floor where he landed on his back.  *Id*. at ¶ 27. Various prison officials and medical staff were immediately informed of

---

[1]    Consistent with the Rule 12(b)(6) legal standard, *supra,* we will accept Agostini's properly pleaded allegations as true.

5

Agostini's fall, and multiple prison workers, including Monaghan, came to the housing unit and removed Agostini from the unit on a stretcher without using a neck brace. *Id*. at ¶ 28. Monaghan then assessed Agostini, who told her that he was "experiencing severe pain in [his] lower back region." *Id*. Monaghan, after her assessment, told Agostini that he could stand up and walk back to his housing unit, "Unit C," and Officer Tully escorted Agostini back to the unit. *Id.* at ¶ 29. Agostini expressed concern to Tully that despite his complaints of severe lower back pain, Monaghan had elected not to send him to a hospital for X-rays and/or an MRI.[2] *Id*. Because Agostini took issue with Monaghan's failure to order any further testing on the day of the fall, he ultimately filed a grievance against Prime Care Medical, Monaghan's employer, in this matter. *Id*. at ¶ 32.

Upon Agostini's return to his housing unit at 11:05 a.m., Officer Riemer, who was in charge of the unit, was given an order by medical staff to reassign Agostini to a bottom tier bunk bed. But before Officer Riemer could do so, he was relieved for his lunch break and Agostini was placed back into the old cell in which he had fallen. *Id*. at ¶ 30. While Riemer was at lunch, Agostini was placed under

---

[2]      Agostini stated to Officer Tully, "I hope they are sending me to the hospital for further assessment of my injury's [sic] because . . . Linda Monaghan does not have any idea what my injury's [sic] could possibly be by simply just examining me for pain by touching me and not sending me out to the hospital for X-ray's [sic] and/or an MRI." *Doc*. *23* at ¶ 29.

the supervision of Tarkett who refused to move Agostini to a cell with a lower bunk, stating that he did not feel like dealing with it and telling Agostini he would have to wait until Riemer returned from lunch. *Id*. Because a lower tier bunk was unavailable in the cell, Agostini chose to lie on the floor while waiting for Riemer to return. *Id*. Agostini subsequently filed a grievance against Tarkett, but it was allegedly denied because he filed it after the expiration of the 10-day deadline for filing grievances. *Id*. at ¶ 31.

When Officer Riemer returned from his lunch, a meal cart was brought to the unit, but Agostini was allegedly unable to get himself up because his pain was so severe. *Id*. At around 12:05 p.m., Agostini was taken in a wheelchair to a different area of the prison to be placed on "Administrative Segregation" for observation until he could be seen by Prime Care Nurse Practitioner Patty Bunting three days later. *Id*. Three days after the fall, on September 16, 2014, Bunting examined Agostini, diagnosed him with "soreness of muscles" from his fall, and prescribed Tylenol and muscle relaxers. *Id*. at ¶ 32. Bunting also advised Agostini that he should start walking, but because he was still experiencing a shooting pain from his lower back to his heel as well as numbness in his thigh, he expressed to Bunting that he wished not to do any walking until an X-ray or MRI was ordered. *Id*. Bunting agreed to order an X-ray, but refused to order an MRI, as Prime Care

7

Medical would not cover the expense. *Id.* X-rays were taken on September 18, 2014, and the day after they were taken, Agostini was informed that the X-rays showed no broken bones or other injuries. *Id.* at ¶ 33.

According to Agostini, the Tylenol and muscle relaxers prescribed by Bunting were not alleviating his pain at all. *Id.* When he complained of this, Prime Care Medical Nurse Administrator Tina Goodwin informed him that he would have to wait until his follow-up appointment with Physician's Assistant (PA) Jenn Mroz on September 23. *Id.* Agostini continued to experience pain, including an alleged incident on September 22 in which his leg pain became so severe that it caused him to black out, fall, and sustain a bump on his head. *Id.* at ¶ 34. After this incident, Goodwin assessed Agostini and ordered that he be placed on intake for observation. *Id.* Agostini was of the opinion that by now he should have been sent out to a hospital for evaluation. *Id.*

On September 23, Agostini had a follow-up appointment with PA Mroz, at which Mroz diagnosed him with sciatica. *Id.* at ¶ 35. Agostini was taken off the Tylenol and muscle relaxers, and Mroz, instead, prescribed both a nerve pain reliever and an anti-inflammatory medication. *Id.* In addition, on September 27, "LPN Kim" assigned Agostini a list of stretching exercises to perform. *Id.* Mroz informed Agostini that this was all that could be done at this point and that it

would take some time for Agostini to experience relief.  *Id*.  Mroz's diagnosis of sciatica led Agostini to believe that Nurse Bunting had earlier misdiagnosed him and that Bunting "was not concerned" with the pain he described when she assessed him earlier.  *Id*.

On October 14, 2014, Agostini's prescription nerve pain reliever and anti-inflammatory medication ran out, and he had to "wait in severe pain for two days" until a follow-up appointment with Debra Wilson, M.D. on October 16, which had been rescheduled from October 14, due to Wilson's unavailability.  *Id*. at ¶ 36.  At the follow-up appointment on October 16, Doctor Wilson confirmed PA Mroz's earlier diagnosis of sciatica and renewed Agostini's prescriptions for the nerve pain reliever and anti-inflammatory.  *Id*.  Several days after the appointment with Doctor Wilson, Agostini requested a dosage increase for his medications, complaining that the pain relief from the current dosages was too "short-lived."  *Id*.  Allegedly, the request was granted, and a prescription was issued for an increased dosage of the nerve pain reliever.  *Id*.  Since his request for an increased dosage was granted at this time, Agostini believed that Nurse Administator Tina Goodwin acted wrongfully in September when she said nothing could be done in response to Agostini's complaint that the Tylenol and muscle relaxers were not alleviating his pain at all.  *Id*.

**B. Agostini's Filing of Grievances with PCCF.**

On September 25, 2014, after his fall, Agostini allegedly questioned Lieutenant Todd Schweyer regarding PCCF's failure to provide ladders[3] as well as its failure to post instructions informing inmates how to access their upper tier bunk beds without the use of a ladder. *Id*. at ¶ 38.  Schweyer allegedly had no answer for this question, but he approved Agostini's request for a grievance against the prison with respect to this matter. *Id*.  When Agostini filed a grievance, he allegedly received the same response from each of three named defendants, Counselor Mary Keller, Counselor Terry Mooney, and Warden Craig Lowe, all who denied Agostini's grievance. *Id.* at ¶ 39.  The most recent denial of his grievance came on October 20, 2014 from Warden Craig Lowe. *Id.* at ¶ 41.  In essence, the alleged response by Keller, Mooney, and Lowe was that neither the lack of ladders nor the lack of instructions on how to access top tier bunk beds should be a concern to Agostini anymore considering he had been transferred to a lower tier bunk bed.  Agostini also filed a Level II medical grievance on September 29, 2014, inquiring as to why more testing had not been done from the outset to diagnose his injuries on the day he fell. *Id*. at ¶ 42.  Agostini complains that the

---

[3]    Although Agostini alleges an unavailability of ladders in his PCCF housing unit, "Unit-C," he does mention in his amended complaint that ladders have been installed on the beds in one of PCCF's other housing units, specifically "Unit-E." *Doc. 23* at ¶ 40.

reply he received to this particular grievance was "still not to [his] satisfaction." *Id*.

### C. The Legal Claims in Agostini's Amended Complaint.

Agostini argues that the unsafe lack of bunk bed ladders, the allegedly inadequate medical treatment and deliberate indifference he suffered, and the rejection of his grievances amount to violations of the Constitution. *Id*. at ¶ 44. Specifically, he raises Eighth Amendment Cruel and Unusual Punishment Clause claims and Fourteenth Amendment Due Process Clause claims. *Id*. Agostini seeks both injunctive relief and monetary damages. *See id*. at ¶¶ 48-50. As injunctive relief, he seeks a permanent injunction ordering the following: 1) that ladders be installed on the bunk beds of every housing unit at PCCF; 2) that instructions on how to use the ladders be put in place and added to the inmate handbook or an instructional video; 3) that Officer Tarkett be reprimanded for his alleged unprofessionalism and be retrained on all of his duties as a corrections officer; and 4) that the defendants "make a greater effort to clarify matters involving negligence before reaching this level without stonewalling or denying the relevance of inmate issues." *Id*. at ¶ 48. As monetary damages, Agostini seeks $1 million in compensatory damages against each defendant jointly and severally, as well as $1 million in punitive damages against each defendant. *Id*. at ¶ 49-50.

11

IV.   **Discussion.**

**A. Claims Against Pike County and PCCF in their Official Capacity.**

In his amended complaint, Agostini alleges that he is suing Pike County and PCCF each in their official capacity.

A municipality, such as Pike County, can be liable under 42 U.S.C. § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson,* 131 S.Ct. 1350, 1359 (2011)(quoting 42 U.S.C. § 1983).   A municipality, however, cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior. Monell v. Department of Social Servs.,* 436 U.S. 658, 691 (1978).   To impose liability on a municipality under Section 1983, a plaintiff must demonstrate that an official municipal policy caused his injury. *Connick,* 131 S.Ct. at 1359.   "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.*

Once a section 1983 plaintiff identifies a municipal policy or custom, he must demonstrate that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).   Where the policy or custom violation

12

is not clear on its face, causation can be established only by "demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.  A showing of simple or even heightened negligence will not suffice." *Berg v. County of Allegheny,* 219 F.3d 261, 276 (3d Cir. 2000).  In limited circumstances, a municipality's failure to train its employees about their duty to avoid violating citizens' rights may rise to the level of a municipal policy. *Connick,* 131 S.Ct. at 1359.  "A municipality's culpability for a deprivation of rights is at its most tenuous [however] where a claim turns on a failure to train." *Id.* A municipality's failure to train must amount to deliberate indifference to the rights of persons with whom the municipal employees come into contact. *Id.*  "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Id.* at 1360 (quoting *Board of Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 410 (1997)).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 409).  Accordingly, when reviewing a failure to train claim, a court "must adhere to a 'stringent standard of fault,' [so that] municipal liability under § 1983 [does not] collapse into *respondeat superior.*"  *Id.* at 1365 (quoting *Bryan Cnty,* 520 U.S. at 406, 410).

13

We conclude that Agostini's amended complaint fails to state a claim upon which relief can be granted against both Pike County and PCCF in their official capacity.

### 1. Claims Against PCCF

First, Agostini's allegations against PCCF fail to state a claim because, as this Court has previously held, "a county prison does not have the legal capacity to be sued in its own name." *Herb v. Dauphin Cnty. Prison*, No. 12-CV-1402, 2012 WL 3062225, at *2 (M.D. Pa. July 26, 2012) (citing *Johnson v. DeRose*, No. 09-CV-267, 2010 WL 817398, at *9, n. 8 (M.D. Pa. Mar. 9, 2010)). Therefore, any claims against PCCF must be brought against Pike County itself. *See Id*. at *2 (citing *Watson v. Abingdon Twp*., 478 F.3d 144, 155 (3d Cir. 2007)).

### 2. Claims Against Pike County.

To the extent that Agostini alleges constitutional violations against Pike County itself, we conclude that these allegations also fail to state a claim for the reasons set forth below.

### a. Claims Against Pike County – Failure to Provide Ladders.

In an attempt to establish *Monell* liability, Agostini argues that the "policy" of installing bunk bed ladders in some housing units but failing to install ladders in other units amounts to both an Eighth Amendment and a Fourteenth Amendment

14

violation.     Furthermore, Agostini, in the alternative, alleges a constitutionally deficient policy of the County in that it fails to post instructions for PCCF inmates informing them how to safely access a top tier bunk bed without a ladder.

When considering a complaint regarding the conditions of a prison by a pretrial detainee, such as Agostini, an Eighth Amendment analysis is inappropriate for "determining if the conditions of confinement rise to the level of a constitutional violation." *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2010). Rather, when pre-trial detainees complain of a prison's conditions, an analysis under the Fourteenth Amendment Due Process clause is more appropriate. *See Boring v. Kozakiewicz*, 833 F.2d 468, 471 (3d Cir. 1987) ("Pretrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process Clause."). When evaluating a pretrial detainee's claims regarding prison conditions, "the proper inquiry is whether those conditions amount to punishment prior to an adjudication of guilt in accordance with law. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To determine whether challenged conditions of pre-trial confinement constitute punishment, the Supreme Court has put forth the following analysis:

> "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other

15

legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on 'whether [it has] an alternative purpose ... and whether it appears excessive in relation to [that] purpose…'"

*Id*. at 538 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)).

Agostini does not allege that the failure to provide ladders was intentionally designed as a punitive measure.  And while there seems to be no case law from this District directly on point with Agostini's ladder complaint, other federal courts within the Commonwealth have suggested that a failure to provide a ladder in a prison cell does not amount to a constitutional violation that would establish a cause of action.  *See Williams v. Corizon*, 12-cv-02412, 2013 WL 4787223, at *15 (E.D. Pa. Sept. 9, 2013) (holding that the City of Philadelphia could not be held liable for a constitutional violation for a failure to provide ladders in all bunk beds, as such an omission would be mere negligence and not a constitutional violation); *see also Pumphrey v. Smith*, 1:09-cv-233, 2010 WL 4983675, at *4 (W.D. Pa. Dec. 2, 2010) ("the lack of a ladder in a prison cell is not a deprivation that reduces Plaintiff's living below 'the minimal civilized measure required.'  Plaintiff could crawl into the bunk or utilize a chair and still not be deprived of the minimal necessities of life.").

16

Even if the failure to provide a ladder does not amount to a constitutional violation, which we conclude it does not, Agostini argues that PCCF's policy of furnishing ladders to some housing units but failing to furnish them to other units, including his, violates his right under the Fourteenth Amendment's Equal Protection Clause.

In order to establish a violation of the Equal Protection Clause in a prison setting, a plaintiff must establish the existence of intentional or purposeful discrimination on the part of the defendant. *See Wilson v. Schillinger*, 761 F.2d 921, 928-29 (3d Cir. 1985). According to a theory cited in Agostini's reply brief, known as the "class of one" theory, a plaintiff states a claim for violation of the Equal Protection clause when he alleges that: (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). Generally when courts have applied the "class of one" theory, they have done so in order to further the Equal Protection clause's objective of "secur[ing] every person within [a] state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted

agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sunday Lake Iron Co. v. Twp. of Wakefield*, 247 U.S. 350, 352 (1918)).

Upon review of Agostini's amended complaint, we conclude that he has failed to state an Equal Protection claim upon which relief can be granted against Pike County or any defendant for that matter.  While it can be argued that PCCF's provision of ladders to Housing Unit E but not to other housing units technically means that Unit E inmates are being treated differently from other inmates, there are no facts alleged to indicate that this was done with a purpose or intent of discrimination.  Agostini merely alleges that the ladders were installed in Unit E in response to reports of previous accidents; he does not allege that the decision to place the ladders in that particular unit was motivated by a preference for Unit E inmates over inmates of other housing units or Agostini himself.  Absent such a showing of discriminatory intent, we do not believe that the installation of ladders in one housing unit and not others constitutes a violation of Agostini's Equal Protection rights.

**b. Official Capacity Claims Against PCCF Officers.**

In the motion to dismiss filed by the Pike County defendants, *see Doc. 27*, defendants allege that Agostini is attempting to sue Lowe, Schweyer, Keller,

18

Mooney, and Tarkett in their official capacities as well as in their individual capacities.  Our review of Agostini's amended complaint, however, reveals that Agostini is suing these five defendants in their individual capacities only. Nonetheless, to the extent that Agostini is raising claims against the five PCCF officers in their official capacity, a dismissal of these claims would be warranted. Because the Supreme Court has held that suing an officer in his or her official capacity is in actuality a suit against the governmental entity that the officer represents, a suit against the five PCCF defendants in their official capacity would amount to nothing more than a suit against Pike County.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Since Pike County is already named as a defendant, a dismissal of any claims against the PCCF officers in their official capacities would be appropriate, as such claims would be redundant.

In light of the aforementioned discussion, we conclude that all claims against the PCCF defendants in their official capacities should be dismissed as they fail to state a claim upon which relief may be granted.

**B. Individual Capacity Claims Against Schweyer, Keller, Mooney, and Lowe.**

With respect to individual capacity liability for state actors, 42 U.S.C. § 1983 "imposes civil liability upon any person who, acting under the color of state

law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor Sch. Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).   Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.*   To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).   The requirement that a defendant act under color of state law is essential in order to establish a claim under § 1983. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Agostini raises claims alleging that Schweyer, Keller, Mooney, and Lowe, all members of the grievance committee, violated his constitutional rights by denying the grievances he filed complaining about the prison's lack of ladders and failure to provide instructions on how to access top tier bunk beds.   Agostini also alleges that such defendants failed to act on his grievances by failing to conduct proper investigations and failing to examine areas of the prison (top bunks) that he alleged were hazardous in his grievances.   Any such claims, though, fail to state a claim upon which relief may be granted because "there is no constitutional right to a grievance procedure."  *Keeling v. Barrager*, 4:CV-11-0365, 2014 WL 1338077,

at *16 (M.D. Pa. Apr. 3, 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977)).   Also, "failure to properly process inmate grievances does not form the basis of a constitutional violation."   *Id*. at *16 (citing *Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D. Pa. 1997)).   Furthermore, to the extent that the grievances Agostini filed pertained to a failure to provide bunk bed ladders, as previously discussed, a failure to provide such ladders does not amount to a constitutional violation anyway.   Thus, Agostini's claims against Schweyer, Keller, Mooney, and Lowe fail to state a claim upon which relief can be granted, and these claims should be dismissed.

### C. Individual Capacity Medical Claims Against the Prime Care Medical Defendants and Officer Tarkett.

As previously discussed, the Eighth Amendment does not apply to complaints by pretrial detainees, and rather the courts engage in a Fourteenth Amendment Due Process analysis.   Nonetheless, the courts "have found no reason to apply a different standard than the [Eighth Amendment] standard . . . when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment."   *Sylvester v. City of Newark*, 120 Fed.Appx. 419, 423 (3d Cir. 2005) (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)).

21

In order for a plaintiff to establish an Eighth Amendment medical-care claim, he must establish that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *see also Groman v. Township of Manalapan,* 47 F.3d 628, 637 (3d Cir. 1995) ("Failure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs.").

Deliberate indifference is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 840 (1994). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009). To act with deliberate indifference, the prison official must have known of the substantial risk of serious harm and must have disregarded that risk by failing to take reasonable measures to abate it. *Farmer,* 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason;

or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999).  The Third Circuit has also held that "[n]eedless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, . . . violates the Eighth Amendment." *Atkinson v. Taylor,* 316 F.3d 257, 266 (3d Cir. 2003).

At the same time, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as a constitutional claim because medical malpractice is not a constitutional violation. *See Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir. 2004); *Singletary v. Pa. Dep't of Corr.,* 266 F.3d 186, 192 n. 2 (3d Cir. 2002) (claims of medical malpractice, absent evidence of a culpable state of mind, do not constitute deliberate indifference under the Eighth Amendment).  Instead, deliberate indifference represents a much higher standard, one that requires "obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse*, 182 F.3d at 197 (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir. 1993) (citations omitted).  Furthermore, if a plaintiff's claims amount to a simple disagreement with a medical officials as to the course of treatment, this does not

23

amount to deliberate indifference.  *See Douglas v. Hill*, 1996 WL 716278, at *7 (E.D. Pa. Dec. 6, 1996) (citing *Boring*, 833 F.2d 468 at 473).  Judged against these legal benchmarks, we conclude that Agostini has failed to state a claim against the Prime Care Medical defendants as well as Officer Tarkett.

### 1. Nurse Linda Monaghan

Agostini takes issue with the medical care provided by Nurse Linda Monaghan immediately after he sustained his fall on September 13, 2014. Specifically, Agostini alleges that Monaghan failed to use a neck brace when removing him from the housing unit after his fall and alleges that Monaghan acted in the wrong by failing to order any X-rays or MRIs to further diagnose any potential injuries Agostini may have, despite his complaints to Monaghan of severe pain in his lower back region.  We conclude that Agostini's allegations against Monaghan fail to state a constitutional claim.  Immediately after Agostini's fall, Monaghan assisted in his transport from his housing unit, conducted a physical examination, and ordered that Agostini be placed on a lower tier bunk bed as a result of the examination's findings.  Thus, Monaghan neither exhibited a wanton disregard of Agostini's medical needs nor did she fail to provide any medical treatment.  To the extent that Agostini disagrees with Monaghan's decisions not to use a neck brace or her decision not to order X-rays or MRIs, it is clear, as touched

24

upon in the aforementioned discussion of law, that prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners. Furthermore, to the extent that Agostini believes Monaghan's decisions were negligent, such negligence would be merely malpractice and would not amount to a constitutional violation.

### 2. Nurse Practitioner Patty Bunting.

We also conclude that Agostini fails to allege facts to establish a constitutional claim against Nurse Patty Bunting. Three days after Agostini's fall, Bunting examined Agostini, diagnosed him with "soreness of muscles," and prescribed Tylenol and muscle relaxers. Bunting also advised Agostini to start walking, and at his request, Bunting also ordered X-rays which ultimately came back showing no broken bones or other injuries. Because Agostini was subsequently diagnosed with sciatica of the nerves by both Physician's Assistant Jenn Mroz and Physician Debra Wilson, he takes issue with Bunting's failure to diagnose him with sciatica and her prescription of Tylenol and muscle relaxers that allegedly did nothing to alleviate his pain. Agostini's amended complaint regarding Bunting is nothing more than an allegation of misdiagnosis and negligent treatment, neither of which amount to a constitutional violation.

25

### 3. Nurse Administrator Tina Goodwin.

Agostini made multiple complaints to Goodwin and that the Tylenol and muscle relaxers prescribed to him on September 16, 2014 were not alleviating his pain.  Agostini alleges that Goodwin responded to his complaints by telling him that nothing could be done and that he would have to wait until his follow-up appointment with Physician's Assistant Jenn Mroz on September 23, 2014. Agostini also states that he was unsatisfied with the decision of Goodwin and other medical staff not to send him to the hospital on September 22 after he allegedly fell due to severe pain in his leg.

Agostini has not, however, alleged sufficient facts to establish that Goodwin exhibited deliberate indifference.  Based on the facts alleged, the gravamen of Agostini's claim against Goodwin is that when he told her the Tylenol and muscle relaxers were not alleviating his pain, she told him he would have to wait until his next follow-up appointment in order to have his medications changed.  Regarding delays, a deliberate indifference claim is established when there is a denial or delay of medical treatment serious enough that it results in "unnecessary and wanton infliction of pain" or "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss."  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  Agostini certainly does not allege that he has

26

suffered a life-long handicap or permanent loss as a result of any of Goodwin's conduct.  And while Agostini alleges that he suffered severe pain causing him to black out subsequent to Goodwin telling him he would have to wait until a follow up appointment to get his medications changed, there is no evidence that Goodwin was aware that the pain was this extreme when Agostini previously had informed her that the Tylenol and muscle relaxers were not working.  Therefore, we would be hard pressed to conclude that any infliction of pain caused to Agostini by Goodwin's alleged inaction was "wanton."

### 4. Officer Tarkett.

On the day Agostini fell in his cell, Nurse Linda Monahan ordered that he be placed in a lower tier bunk bed on account of his injury.  When Agostini returned from his examination with Monaghan, he alleges that Tarkett refused to move him to a cell with a lower tier bunk bed and that he would have to wait until Unit C's regular corrections officer, Officer Riemer, returned from lunch.   Agostini alleges that Tarkett's refusal to immediately move him to a cell with a lower bunk amounted to a deliberate indifference of his medical needs in that he was suffering from pain and was forced to lie on the floor until Riemer returned, since there was no lower bunk available in his current cell.  Agostini further argues that Tarkett's refusal to immediately provide him with a lower tier bunk bed constituted a delay

of medical treatment amounting to deliberate indifference.  While there may have been a delay in moving Agostini to a lower tier bunk, the delay did not rise to the level of causing a wanton and unnecessary infliction of pain, nor did it cause a life-long handicap or permanent loss.  Agostini was merely told that he would have to wait until Riemer returned from lunch to be placed in a lower bunk bed, a delay of treatment that was presumably very short, absent a showing that Agostini's injuries were grave or in need of immediate attention.  And although Agostini alleges that he was suffering from pain at the time of Tarkett's refusal to move him forced him to lie on the floor, there is no indication that lying on the floor was a direct *cause* of the pain; rather, it seems that the pain of which Agostini complained was the result of his earlier fall.  To the extent that lying on the floor was *uncomfortable* given Agostini's pre-existing pain, such discomfort in itself would not establish a claim against Tarkett.  The Supreme Court has held that the Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  At the same time, "neither does it permit inhumane ones." *Farmer*, 511 U.S. 825 at 832 (citing *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).  Here, given the aforementioned facts, Agostini being required to lie on the floor for a brief period of time while waiting for someone to return from lunch is more appropriately classified as discomfort as opposed to sheer inhumanity.

28

**D. Official Capacity Claims Against Prime Care Medical, Inc.**

Agostini also brings official capacity *Monell* claims against Prime Care Medical, Inc., the company that employed defendants Monaghan, Bunting, and Goodwin. These claims also fail to state a claim upon which relief may be granted. As *Monell* doctrine generally dictates, private corporations contracted by a prison to provide health care to inmates cannot be held liable on a respondeat superior theory alone and can only be held liable if it is shown that there was an established policy or custom of exhibiting deliberate indifference towards inmates' medical needs. *See Natale*, 318 F.3d at 583-84. Agostini not only fails to allege that the individual nurses acted in accordance with a Prime Care Medical policy, but as we concluded earlier in this report, he has failed to establish that the Prime Care nurses themselves exhibited a deliberate indifference to his medical needs.

**E. Potential Negligence Claims.**

Although the gravamen of Agostini's amended complaint is federal constitutional violations, Agostini also generally alleges negligence and malpractice against various defendants throughout the amended complaint, by using such words as "negligent" throughout the document. Therefore, although negligence is not denoted as a separate cause of action in the amended complaint, defendants Prime Care, Bunting, Goodwin, and Monaghan preemptively move to

have any prospective negligence claims dismissed with prejudice, citing Agostini's failure to file a certificate of merit within 60 days of his January 29, 2015 complaint.   In Agostini's reply brief (Doc. 49), however, he asserts that he only wishes to bring federal constitutional claims in his amended complaint and does not wish to bring claims for negligence.   Therefore, we will construe Agostini's amended complaint as not raising any negligence claims, and therefore it is unnecessary to address the aforementioned motion to dismiss any prospective negligence claims.

### F. Agostini Should be Granted Leave to File a Second Amended Complaint.

Before dismissing a complaint for failure to state a claim upon which relief may be granted under the screening provision of 28 U.S.C. § 1915A, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile.   *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).   In light of the liberal-amendment requirement, although this screening analysis calls for dismissal of the amended complaint, we recommend that Agostini be granted a final opportunity to comply with the requirements of Fed.R.Civ.P. 8, and, thus, we will recommend that Agostini be granted leave to file a second amended complaint.

V.   **Recommendations.**

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that:

(1) Both motions to dismiss (Doc. 26 and Doc. 45) Agostini's amended

complaint be **GRANTED**;

(2) Agostini be granted leave to file an amended complaint.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter
> described in 28 U.S.C. § 636 (b)(1)(B) or making a
> recommendation for the disposition of a prisoner case or a
> habeas corpus petition within fourteen  (14) days after being
> served with a copy thereof. Such party shall file with the clerk of
> court, and serve on the magistrate judge and all parties, written
> objections which shall specifically identify the portions of the
> proposed findings, recommendations or report to which objection
> is made and the basis for such objections. The briefing
> requirements set forth in Local Rule 72.2 shall apply. A judge
> shall make a de novo determination of those portions of the
> report or specified  proposed findings or recommendations to
> which objection is made and may accept, reject, or modify, in
> whole or in part, the findings or recommendations made by the
> magistrate judge. The judge, however, need conduct a new
> hearing only in his or her discretion or where required by law,
> and may consider the record developed before the magistrate
> judge, making his or her own determination on the basis of that
> record. The judge may also receive further evidence, recall
> witnesses or recommit the matter to the magistrate judge with
> instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this 2nd day of July 2015.

<u>**_S/ Susan E. Schwab_**</u>
Susan E. Schwab
United States Magistrate Judge